UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN OCAMPO, *individually and on behalf of
all others similarly situated*,

                    Plaintiff,

  -against-

PROFESSIONAL CLAIMS BUREAU, INC. and
DOES, *1 through 10 inclusive*,

                   Defendants.
------------------------------------------------------------------X

**FINDINGS OF FACT
AND CONCLUSIONS
OF LAW**
14-CV-4983 (SIL)

**LOCKE, Magistrate Judge:**

      By way of Complaint dated August 21, 2014, Plaintiff John Ocampo ("Plaintiff" or "Ocampo") commenced this action against Defendant Professional Claims Bureau, Inc. ("Defendant" or "Professional Claims Bureau"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. *See* Complaint ("Compl."), Docket Entry ("DE") [1]. An Amended Complaint was filed on January 9, 2015, *see* Amended Complaint ("Am. Compl."), DE [11], and, on December 16, 2015, the parties consented to the jurisdiction of the undersigned for all purposes. DE [33]. On January 12, 2016, the parties agreed to a bench trial, which was held on July 27, 2016. DE [34, 42]. The Court now issues its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 52(a). Having considered the evidence adduced at trial, the arguments of counsel, the parties' pre- and post-trial submissions, and the controlling law on the issues presented, the Court concludes that Plaintiff failed to establish a violation of the FDCPA. Accordingly, judgment is entered in favor of Defendant and the case is closed.

## I. BACKGROUND

On August 21, 2014, Plaintiff commenced this action alleging violations of sections 1692(e) and (g) of the FDCPA, seeking to recover: (1) statutory, actual, and treble damages pursuant to 15 U.S.C. § 1692k; and (2) costs and reasonable attorneys' fees pursuant to 15 U.S.C § 1692k.[1] *See* Compl.; Am. Compl. In the Amended Complaint, Ocampo alleges that the parties' dispute arises from a debt incurred in connection with his wife's stay at a hospital. Am. Compl. ¶ 6. Defendant, a debt collector, sent Ocampo a "dunning letter" to collect the money allegedly owed. *Id.* at ¶ 8. This initial letter was dated May 7, 2014, but according to the Amended Complaint, was received "subsequent to and no earlier than May 9, 2014." *Id.* at ¶ 10. It contained a notice which advised Plaintiff that he could, within 30 days, dispute and demand validation of the debt. *Id.* at ¶ 9. Ocampo claims, however, that less than 30 days later, he received a second collection notice dated June 7, 2014. *Id.* at ¶ 11. This letter stated that the account was "SERIOUSLY PAST DUE" and demanded payment within ten days of the notice. *Id.* at ¶¶ 13-15. Plaintiff further alleges that the second letter was confusing, misleading, and incorrectly assumes that the debt was valid before the 30-day window for dispute elapsed, all in violation of the FDCPA. *Id.* at ¶¶ 16-17.

Neither a motion to dismiss nor a motion for summary judgment was filed in this action. At a pre-trial conference held on January 12, 2016, the parties agreed to

---

[1] Although the Amended Complaint contains class allegations and the caption indicates an intent to proceed as a class action, no motion for certification was ever filed.

2

a bench trial and they submitted pre-trial statements on February 19, 2016. *See* DE [34] (parties agreed to a bench trial); Plaintiff's Pre-Trial Submission ("Pl.'s Pre-Trial Sub."), DE [38]; Defendant's Pre-Trial Submission ("Def.'s Pre-Trial Sub."), DE [37]. As set forth in their respective submissions, the parties do not dispute the controlling law. *See* Pl.'s Pre-Trial Sub. at 1 ("The legal issues in this case are simple, well established, and have not been contested by the Defendants during the course of this litigation."). Rather, the sole dispute is whether Plaintiff received the second collection notice within 30 days of the first letter, thereby violating the FDCPA. In his Pre-Trial Submission, Plaintiff asserts that he received the two letters within less than 30 days of each other, evident by his sworn affidavit and anticipated testimony under oath at trial.[2] *Id.* at 4. Professional Claims Bureau argues that Ocampo "has no proof regarding receipt of the letters," but that "defendant's books and records show the dates upon which the letters were sent," which was more than 30 days apart. Def.'s Pre-Trial Sub. at 1-2.

Accordingly, the Court held a bench trial on July 27, 2016 to determine whether the two dunning notices were received by Ocampo within 30 days of each other. *See* DE [42]. In support of his case, Plaintiff testified regarding the date he received the letters, *see* Transcript of Bench Trial ("Tr.") 6:18-20; 7:19, and entered both the May 7, 2014 and June 7, 2014 collection notices into evidence. *See* Exhibit 1 of Plaintiff's Trial Exhibits ("Pl. Ex. 1"); Exhibit 2 of Plaintiff's Trial Exhibits ("Pl. Ex. 2"). Leigh Marcus, the Executive Vice President of Professional Claims Bureau,

---

[2] Although Plaintiff references a sworn affidavit, the Court was not provided with such affidavit and therefore relies solely on the evidence adduced at trial.

testified on behalf of Defendant. Tr. 28:12-28. Professional Claims Bureau entered two exhibits into evidence: the Amended Complaint and a screen shot of Defendant's record of Ocampo's account, which includes a list of all letters mailed to Plaintiff. *See* Exhibit A of Defendant's Trial Exhibits ("Def. Ex. A"); Exhibit B of Defendant's Trial Exhibits ("Def. Ex. B"). At the close of Plaintiff's presentation of his case, Professional Claims Bureau moved for a directed verdict, arguing that no evidence was presented as to the date that the letters were received. Tr. 22:8-21. The Court denied the motion, based on Ocampo's testimony as to the date he remembers receiving each letter. *Id.* at 40:5-9. Following the trial, the parties filed simultaneous Post-Trial Submissions. *See* Plaintiff's Post-Trial Submission ("Pl.'s Post-Trial Sub."), DE [46]; Defendant's Post-Trial Submission ("Def.'s Post-Trial Sub."), DE [45].

## II. FINDINGS OF FACT

John Ocampo is an individual with an address in Wantagh, New York. *See* Pl. Ex. 1; Pl. Ex. 2. This suit arises out of a debt incurred in connection with his wife's surgery at a hospital. *See* Tr. 4:25. Defendant Professional Claims Bureau is a debt collection agency, with a principal place of business in Garden City, New York. Am. Compl. ¶ 3; Answer to First Amended Class Action Complaint for Damages ("Answer"), DE [13], ¶ 3. It is a family owned-and-operated collection agency for medical providers, and its Executive Vice President is Leigh Marcus, whom the Court found to be a credible witness. Tr. 29:9-21.

Defendant receives approximately 20,000 to 30,000 new accounts each week for collection. *Id.* at 19:25; 30:1. For each new account, it creates an electronic file in

4

its internal software database where it maintains a record of all communications with a consumer. *Id.* at 30:7-22. The computer system determines when an account requires a letter to be sent to a consumer, and generates and dates that letter in the system. *Id.* at 31:19-25. The actual letter is then dated and mailed one day subsequent to the date that it was stamped in the system. *Id.* at 32:7-10. An outsource letter mailing company located in South Carolina then mails the letter to the consumer the same day that the letter is dated. *Id.* at 32:9-10. The contracted turn-around time for mailing letters is 24 hours. *Id.* at 34:12-14.

In April 2014, Ocampo's account was referred to Professional Claims Bureau for collection of a $1,000.00 debt incurred in connection with his wife's surgery. *See* Def. Ex. B; Tr. 31:12-14. Plaintiff had previously disputed this debt with a separate, non-party debt collector. Tr. 5:7-16. Defendant's computer records indicate that an initial collection notice, dated May 7, 2014, was generated on May 6, 2014, and, in accordance with the company's practice, was printed and mailed to Ocampo on May 7, 2014. Def. Ex. B.; Tr. 32:15-17. Plaintiff received the letter via first class mail at his address in Wantagh, New York. Tr. 16:1-9; Pl. Ex. 1. The letter explains that the account, with an outstanding debt of $1,000.00, "has been referred to our offices for collection." Pl. Ex. 1. The body of the letter also states:

> [u]nless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

5

*Id.* Ocampo testified at trial that he received the first collection notice on May 15, 2014 or May 16, 2014. Tr. 6:18-20. He had no documentary evidence to support his recollection and he did not keep the envelope in which the letter arrived. *Id.* at 15:19-21; 16:14-15. Rather, he recalled calculating that he had "to handle it by June 15 or June 16." *Id.* at 17:3-8.

The Court declines to credit Ocampo's testimony, as it conflicts with his allegations in the pleadings, and the Court generally found him incredible on the stand. In his initial Complaint, Ocampo alleges that he received the first letter "on or about May 9, 2014." *See* Compl. ¶ 10. Then, in his Amended Complaint, Plaintiff attempted to make the receipt date more ambiguous, alleging that he received the first letter "subsequent to and no earlier than May 9, 2014." Am. Compl. ¶ 10. Finally, at trial, he testified that he received the letter on May 15 or May 16. Tr. 6:18-20. Plaintiff's version of events evolved throughout the course of this action in what the Court concludes was an attempt to save his case because the facts as originally stated failed to support his claim.

Professional Claims Bureau's computer records indicate that a second collection notice was generated on June 6, 2014. Def. Ex. B. In accordance with the practices of the company, this letter was printed and mailed on June 7, 2014. *See* Tr. 32:23-25; 33:1-2. Defendant similarly received this letter, dated June 7, 2014, at his address in Wantagh, New York. Pl. Ex. 2. It states at the top that "THIS ACCOUNT IS SERIOUSLY PAST DUE" and that "[p]ayment is expected within 10 Days of this notice." *Id.* Unlike the first letter, this notice did not contain language that Plaintiff

6

was allotted time to dispute the debt and request verification of its validity. *Id.* Ocampo testified that he received this second notice on June 11, 2014 or June 12, 2014, "roughly three weeks after [he] had gotten the original letter." Tr. 7:18-23. He did not maintain any proof or receipt of the date that the second notice was received, including the envelope. *Id.* at 18:4-6. Ocampo's testimony at trial was significantly more precise than his allegations in the pleadings, further undermining his credibility, as he failed to allege in the Complaint the date he received the second letter, and pleaded in the Amended Complaint only that he received the second letter "less than 30 days" from the initial notice, without providing the actual date of receipt. *See* Am. Comp. ¶ 11.

Plaintiff's other testimony further damaged his reliability. For example, although he claims to recall that he received the first dunning notice on May 15, 2014 or May 16, 2014—which, at the time of trial, was over two years prior—he also testified that he did not remember reviewing the Amended Complaint before filing because it was filed a year and a half ago because "my wife had surgery every year, so I don't remember this one." Tr. 14:17-24. Also, when asked if familiar with the Complaint filed in this action, Plaintiff evasively stated "[t]he amended complaint, yes." *Id.* at 13:7. However, when questioned about details regarding the Amended Complaint or if he reviewed it before it was filed, Ocampo testified that he did not know or remember. *Id.* at 14:14-19. In light of Plaintiff's own testimony which casts the accuracy of his memory into doubt, and given that his entire case relies solely on

7

his recollection because he submitted no other evidence, the Court declines to credit his testimony as to the date he claims to have received the notices.

### III. CONCLUSIONS OF LAW

The sole issue before the Court is whether the two collection notices were received within 30 days of each other, such that there was a violation of 15 U.S.C. § 1569g.[3] For the reasons set forth herein, Ocampo failed to prove receipt of the two letters within the 30-day timeframe sufficient to establish a violation of the FDCPA. Accordingly, the claim is rejected and the case is closed.

The FDCPA prohibits deceptive practices by debt collectors. *See Llewellyn v. Asset Acceptance, LLC*, No. 15-CV-3681, 2016 WL 5944723, at *1 (2d Cir. Oct. 13, 2016) (summary order) ("The FDCPA . . . prohibit[s] deceptive debt collection and reporting practices."). To that end, and in response to "the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," the FDCPA provides for a 30-day period in which a consumer may dispute and seek validation of an alleged debt. *Jacobson v. Healthcare*

---

[3] In the Amended Complaint, Plaintiff also alleges a violation of 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10); Am. Compl. ¶ 21. Although Plaintiff notes in his Post-Trial Submission that Defendant is liable "under section 'e' of the Act for making misleading and/or deceptive statements in its communications to the Plaintiff," *see* Pl.'s Post-Trial Sub. at 5, Plaintiff neither sets forth the legal framework of such a claim in his Pre- or Post-Trial Submissions, nor makes any specific arguments as to a violation of subsection (e). Accordingly, the Court deems this claim abandoned, and only analyzes Plaintiff's claim pursuant to 15 U.S.C. § 1692g. *See Green v. Pinnacle Credit Servs., LLC*, No. 15-CV-5344, 2016 WL 5107142, at *2 (E.D.N.Y. Jan. 20, 2016) (deeming an FDCPA claim in a complaint abandoned where plaintiff failed to make any argument in support of the claim).

*Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (citations omitted). The statute reads, in relevant part, that an initial communication by a debt collector must include:

> a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; [and] a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector . . . .

15 U.S.C. § 1692g(a)(3)-(4). This 30-day dispute period begins when the letter is received by the consumer and not when it is dated. *See Jacobson*, 516 F.3d at 93 ("[W]e find that even the least sophisticated consumer, reading the document in its entirety, would understand that the thirty-day dispute period started running from the day she received the letter, rather than from the date the letter was written.").

During this 30-day timeframe, known as the validation period, the debt collector is not foreclosed from contacting the debtor. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quoting *Jacobson*, 516 F.3d at 89) ("[T]he validation period is not a grace period; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity."). Nonetheless, any subsequent collection activity during the 30-day period "may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b). Accordingly, section 1692g is violated if a debt collector "sends additional communications, along with or after the written validation notice, containing language that overshadows or contradicts the rights set forth in the

9

notice." *Spira v. I.C. Sys., Inc.*, No. 05-CV-4367, 2006 WL 2862493, at *3 (E.D.N.Y. Oct. 5, 2006) (internal quotation marks omitted). Such notice is "overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998). Here, the parties do not dispute that the language in the June 7, 2014 letter overshadowed the rights as set forth in the initial dunning notice, but rather contest whether the two notices were received during the 30-day validation period such that section 1659g was violated.

Applying these standards, Plaintiff's claim fails. As set forth above, the Court declines to credit Ocampo's testimony regarding the dates he received the dunning notices. Throughout the course of this litigation, the date on which he claims to have received the first collection notice has been a moving target. *See* Compl. ¶ 10 ("on or about May 9, 2014"); Am. Compl. ¶ 10 ("subsequent to and no earlier than May 9, 2014"); Tr. 6:20 (May 15 or May 16). In an attempt to save his case, Plaintiff argues that the Amended Complaint should not be used to undermine his credibility because it did not contain a certain date that he received the first notice. *See* Pl.'s Post-Trial Sub. at 3. Even if true, as explained above, Plaintiff's other testimony cast doubt on his ability to recall events accurately. *See* Tr. 14:17-24 (testifying that he did not remember reviewing the Amended Complaint prior to filing because it was filed a year and a half ago). Considering that the entirety of the proof offered by Plaintiff is his admittedly incomplete recollection as to when he received the letters, the Court

10

declines to rely on his testimony in determining whether there was a violation of the FDCPA.

Further, Plaintiff's testimony at trial coupled with his allegations in the pleadings—even if true—do not prove a violation of the FDCPA. At trial, Ocampo testified that he received the second dunning notice on either June 11 or June 12. Tr. 7:19. If this is true, in order to succeed on his claim, he must have received the first letter 30 or fewer days prior, May 12, 2014. Yet, in his Amended Complaint, he claims he received the first letter "subsequent to and no earlier than May 9, 2014." Am. Compl. ¶ 10. As such, if Plaintiff received the first dunning notice on May 10 or 11, an allegation in the Amended Complaint to which he is bound, and the second notice on June 11 or June 12, as he testified, there is no violation pursuant to section 1692g of the FDCPA. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (finding plaintiff bound to allegations in the second amended complaint for the entirety of the litigation); *Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335, 339 (E.D.N.Y. 2003) ("[A]llegations of fact are binding judicial admissions.").

Instead, the Court relies on the evidence presented by Professional Claims Bureau to support a finding that the letters were received in excess of 30 days apart. Defendant's electronic file of Ocampo's account states that the two letters were generated on May 6, 2014 and June 6, 2014. Def. Ex. B. At trial, Marcus testified that letters are mailed one day subsequent to when they are generated in the system. Tr. 32:7-25; 33:1-2. Thus, the letters were mailed to Plaintiff on May 7, 2014 and

11

June 7, 2014, 31 days apart. Where, as here, consecutive collection notes are mailed to a consumer, courts in this Circuit presume the same delivery timeframe for both letters. *See Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 158 (E.D.N.Y. 2005) (assuming that a plaintiff received two collection notices less than 30 days apart where they were dated 29 days apart); *Rabideau v. Mgmt. Adjustment Bureau*, 805 F. Supp. 1086, 1089, n.1 (W.D.N.Y. 1992) (allowing one day for delivery of subsequent dunning notices where plaintiff was uncertain as to the exact dates of receipt of both letters). Therefore, as the letters were mailed 31 days apart, presumably took the same amount of time for delivery, and Ocampo presented no credible evidence to the contrary, the Court concludes that Plaintiff did not receive the two letters within 30 days of each other. Accordingly, Ocampo failed to establish a violation of the FDCPA.

### IV. CONCLUSION

Based upon the foregoing findings of fact and conclusions of law, the Court concludes that Plaintiff failed to prove a violation of the FDCPA. Accordingly, this claim is rejected and the Clerk of the Court is directed to enter judgment in favor of Defendant and close this case.

| | |
|---|---|
| Dated: Central Islip, New York<br>November 4, 2016 | **SO ORDERED**<br><br>/s Steven I. Locke<br>STEVEN I. LOCKE<br>United States Magistrate Judge |